McDonnell *v.* Olwell et al.

---

CHARLES McDONNELL, Plaintiff in Error, *v.* JAMES OLWELL *et al.*, Defendants in Error.

### ERROR TO COOK COUNTY COURT OF COMMON PLEAS.

An affidavit to a plea, in which the party states that he has a defence to the merits of the action, omitting the word "good," is sufficient, under the act regulating the practice in the Circuit and Common Pleas Courts of Cook county, and perjury may be assigned upon it, if the plea were wholly frivolous.

The said act of 12th February, 1853, was clearly within the constitutional power of the Legislature to enact.

THIS was an action of assumpsit brought to the Cook county Court of Common Pleas; to which the defendant pleaded non-assumpsit, supported by affidavit of merits, stating that the party who made it, was defendant in the suit, "and that he has a defence therein on the merits."  . ·

On motion of counsel for plaintiff, the plea and affidavit were struck from the files, because of the insufficiency of the affidavit

McDonnell *v.* Olwell et al.

to the defence on the merits. To which the defendant excepted. On motion of counsel for plaintiffs, default was thereupon entered and judgment was taken for the plaintiffs.

J. M. WILSON, Judge, presided. The judgment was entered at the vacation term, in April, 1855. The defendant, below, brought error.

BLACKWELL, BALLINGALL and UNDERWOOD, for Plaintiff in Error.

HARVIE and TULEY for Defendants in Error.

SCATES, C. J. There are but two questions presented in this case—1st, the sufficiency of the affidavit of merits; and, 2nd, the constitutionality of the act of 12th Feb., 1853, regulating the practice of the Circuit and Common Pleas Courts of Cook county.

The plaintiff pleaded the general issue, and made affidavit that he had "a defence therein on the merits," omitting the word "good" as contained in the phraseology of the act.

We are not able to read the statute in a sense requiring defendant to swear to the goodness of his defence in the view, light or sense of making it successful, by sustaining it at all events upon the trial—but in the sense that he has really, truly, *bona fide* a defence to the merits, and which, under a plea to the merits, he ought to be allowed to present, and have investigated, and judgment passed upon its goodness in the sense of sufficiency as an answer to the action in bar, or partial bar of a recovery.

If defendants are required to swear to the goodness of their defences upon the merits, in the sense of sustainable sufficiency, few could, with a conscience void of offence, make defence at all, although circumstances of real controversy might exist, which would demand and justify an investigation on a defence to the merits. The act never contemplated that defendants should form such solid convictions and firm judgments in their own minds, of the sufficiency and goodness of the defence, as to swear to the legality and justice of its grounds. Many controversies involve counter explanatory facts, and principles of law, that can only be clearly known, understood and judged of, upon full investigation, and the final result. Where controversies of this character exist, in matters of contract, involving the legal sufficiency of the merits of the defence in doubt, and yet the party genuinely, truly, in good faith, believes the contract ought not to be enforced against him, and that the facts showing the grounds of his defence ought to be investigated, and adjudged according to law, surely the statute was not intended to cut him off without a hearing, because he does not, or cannot, conscientiously

swear that the defence will prove " good " upon the trial. Where a plea or notice is put in, which is good in substance to present a defence upon the merits—accompanied by an affidavit of merits in the defence, it necessarily includes " good " in the sense of a real, genuine, *bona fide* defence, such as would be admissible under the pleading, and in contradistinction to its being frivolously or groundlessly done. It must be in this sense, and this alone, that we can understand a party when he swears he has a *defence upon the merits.* And, if knowingly false in this sense, we cannot doubt that perjury could be assigned upon it under the statute, without the word " good " being in it. The language imports the full sense without that word—and we are unable to conceive any explanatory subterfuge, admissible as a legal answer to perjury under the general statement, which would be excluded by the additional " good defence " in the affidavit. We are, therefore, of opinion that the affidavit in this case, is sufficient.

We have no reason to doubt the power of the legislature, under the constitution, to regulate the remedies, and practice in a part of the courts of general jurisdiction, to suit the exigencies of the public interest, by expediting the disposition of causes therein. The proposition implies a want of power in the legislature to adapt the forms of action, processes, and practice in courts of certain localities, to the forms and modes best suited to the dispatch of business accumulating in them. This would seem to be more technically strict, than might be required in the construction of the clause authorizing the organization of inferior courts in cities—which only restricts the power to an " *uniform organization* and *jurisdiction:*" and which latter, peradventure, might be administered through forms of action, processes, and practice, differing from other superior courts of the State.

The constitution has delegated the whole judicial power of the State to " one Supreme Court," (Art. 5. Sec. 1,) with " original jurisdiction in cases relative to the revenue, in cases of *mandamus, habeas corpus,* and in such cases of impeachment, as may be by law, directed to be tried before it," with " appellate jurisdiction in all other cases," (Art. 5, Sec. 5): to " Circuit Courts," with " jurisdiction in all cases at law and equity, and in all cases of appeals from all inferior courts," (Art. 5, Sec. 8): " in County Courts" whose " jurisdiction shall extend to all probate, and such other jurisdiction as the General Assembly may confer in civil cases, and such criminal cases as may be prescribed by law, where the punishment is by fine only, not exceeding one hundred dollars," (Art. 5, Sec. 18): and in " Justices of the Peace," who shall " exercise such jurisdiction as may be prescribed by law," (Art. 5, Sec. 27). The constitution has thus

conferred, defined and divided out this judicial jurisdiction—but has not prescribed the forms and modes in which it is to be exercised—and, consequently, *uniformity*, is not, and cannot be made one of the requirements of the constitution; unless *jurisdiction* is made to include it, and this would extend alike to each and all the courts. A construction of the constitution which would require the forms of action, processes and practice of all the courts to be the same, is wholly inadmissible. The constitutional power to regulate remedies, has, I believe, been universally and uniformly admitted, and supported by the courts.

The case before us has been a mere regulation of the practice in the courts of one county, and clearly within the constitutional power of the legislature to make.

In *Vanzant* v. *Waddel*, 2 Yerg. R. 260, new and additional remedies, confined to creditors of two banks, were sustained as constitutional. But that case, and the one before us, are very unlike the other cases cited in argument.

In *Wally's Heirs* v. *Kennedy*, 2 Yerg. R. 554, the act provided for dismissing Indian reservation cases, where prosecuted for the use of another—and was, therefore, a particular, private, partial law, and not a general public law—and in its operation divested private rights by denying all remedy.

So a special act authorizing the guardians of the minor heirs of Jones to sell the real estate descended to them, and to apply the proceeds to the payment of the debts of decedent, was held to be unconstitutional on the same ground, and for the additional reason that it was the exercise of judicial power. *Jones' Heirs* v. *Perry et al.*, 10 Yerg. R. 59. See also, 4 Yerg. R. 202 ; 5 Yerg. R. 320.

Yet a grant of power to a father to sell the land of his children and put the proceeds at interest for the benefit of the infant owners, was constitutional. It is not the exercise of a judicial power—but ministerial and beneficial to those interested, by enlarging the power of others to do for their benefit what they lacked power and capacity to do for themselves. *Rice et al.* v. *Parkman*, 16 Mass. R. 326. This may not, however, authorize the suspension of the Statute of Limitations in favor of a particular individual or case, as decided in *Holden* v. *James, Adm'r*, 11 Mass. R. 397. Nor does the creation of a special court for the determination of suits by a bank against her officers and other defaulters to it, fall within legislative powers. *Bank of the State* v. *Cooper et al.*, Appendix 2 Yerg. R. 599. So is a partial discrimination between citizens, by making an embezzlement of funds of a particular bank, or false entries by its officers, agents or servants, felony in them, and not in others ; or in like cases of all banks and all persons, *Budd* v. *The State*,

3 Humph. R. 483, not within the constitutional power of legislation.

But we see no analogy between such cases and the case at bar regulating the practice in the courts of one county, applicable to all suitors in those courts.

Judgment reversed and cause remanded for replication to the plea.

*Judgment reversed.*